STRAIN, Appellant, v. CHAMBERLAIN AUTO & SUPPLY CO., A Corporation, et al, Respondents.

(274 N. W. 661)

(File No. 8014. Opinion filed September 1, 1937)

*Fellows & Fellows* and *Morgan & Whiting*, all of Mitchell, and *Clair Roddewig*, of Pierre, for Appellant.

*Miller & Miller* and *Hitchcock & Sickel*, all of Mitchell, for Respondents.

POLLEY, J. The plaintiff Mitchell Trust Company is a corporation engaged in the banking and trust business at Mitchell. Plaintiff Strain is the state superintendent of banks.

On the 24th day of April, 1923, plaintiff trust company, acting in its individual capacity and not as trustee for any one, loaned

from its own money to the defendant Chamberlain Auto & Supply Company, a corporation, doing business at Chamberlain, the sum of $20,000, which loan was evidenced by twenty $1,000 first mortgage bonds, the said bonds bearing interest at the rate of 6½ per cent. per annum, payable semiannually to the trust company, as trustee, said bonds being payable on the 1st day of May, 1933; and to secure the payment of said bonds the said supply company executed and delivered to the trust company as trustee a first mortgage on certain property in Chamberlain. Interest coupons payable to the trust company were attached to said bonds. The said bonds were then indorsed, "without recourse," and sold to certain customers of the trust company; but the mortgage securing the bonds was retained in the possession of the trust company. The supply company then gave to the trust company a promissory note in the sum of $1,000, payable in installments to the trust company in its individual capacity, secured by a second mortgage on the same property, as a commission for making the $20,000 loan.

The trust company, then assuming to act as agent for the bondholders, proceeded to collect the interest evidenced by the interest coupons from the mortgagors and pay the same to the bondholders. By the terms of the mortgage, the mortgagors were to pay the taxes, keep up the insurance, etc., on the mortgaged property.

The mortgagor defaulted in the payment of the taxes for the second half of 1925 and also defaulted in the payment of the taxes for the years 1926, 1927, 1928, and 1929. Upon these defaults the trust company, acting in its individual capacity, and not as trustee, purchased the mortgaged property at the tax sale held on December 12, 1927, for the second half of the 1925 taxes and the whole of the 1926 taxes and took a treasurer's tax sale certificate issued to the trust company in its individual capacity, and thereafter paid the 1927, 1928, and 1929 taxes as "subsequent taxes." Thereafter, the mortgagors defaulted in the payment of the $1,000 commission note and mortgage, and on or about the 15th day of July, 1930, the trust company, acting in its own behalf, and not as trustee, proceeded to foreclose the commission mortgage on which $350 was still due. At the foreclosure sale the trust company acting in its own behalf and not as trustee bid in the said property

for the total sum of $4,493.81, which sum was made up of the following items:

Balance due on the commission note and mortgage ......$ 350.00
Interest on same ........................................ 41.56
Taxes paid on the mortgaged property ................. 3,834.32
Interest on same ....................................... 213.81

Sheriff's certificate of sale issued to the trust company, and on the 23d day of July, 1931, sheriff's deed for the mortgaged property issued to the trust company in its own behalf and not as trustee. After the foreclosure sale, the trust company paid the 1930 taxes in the sum of $886.68, and on May 1, 1932, the trust company paid from its own funds interest on the bonds in the sum of $357.50 and collected rent on the mortgaged property in the sum of $60.58, which sum was credited against the $357.50 interest it had paid.

"That the said Mitchell Trust Company failed and neglected to notify any of the defendant bondholders of the default by the mortgagor, in the payment of the taxes as hereinafter set out, nor did said Trust Company notify any of said bondholders that the mortgagor did not pay the said sum of $357.50 interest paid by said Mitchell Trust Company, nor that said interest was paid by the Trust Company with its own money and not with the money of the mortgagor, nor did the said Mitchell Trust Company notify any of the defendant bondholders that it intended to foreclose its second mortgage, nor that it had foreclosed said mortgage and taken deed to itself, nor did said Mitchell Trust Company notify the said bondholders that there was any default in the payment of the 1930 tax by the mortgagor nor that said Trust Company paid said tax with its own funds, and that it was not until after the commencement of this action that said bondholders were appraised or informed of the true facts relative to the payment of the taxes, the foreclosure of said second mortgage, and the payment of interest, as herein set out. * * *"

The trial court further found as a fact:

"That since 1925 the property covered by said mortgage has greatly depreciated in value, and is not now or was it at the time of the commencement of this action, or at the time of the trial of

this action worth nearly enough to pay the principal of said first mortgage, with interest and delinquent taxes and there is now no market for the sale of said property."

"That at the time the said Mitchell Trust Company paid said taxes and interest it was the custom and had been the custom, for a long time prior thereto, for said Mitchell Trust Company in similar situations to pay taxes and interest not paid by the mortgagors and treat said payments as investments, and it considered the said payments of taxes and interest as investments in the present case, and that when it foreclosed said second mortgage, it cancelled said taxes paid by it on the books of the company, the said custom was unknown to any of the defendants."

"That in the month of August, 1928, the Trust Company took charge and possession of the mortgaged property and thereafter and until the suspension of said Trust Company, collected the entire rentals of said property and administered the same, and that during that time it collected as income from said property the sum of $9164.67 and that said sums so collected were used by it in paying repairs, insurance premiums, and general expenses of upkeep and in paying interest due upon the said $20,000.00 mortgage, and that from said rental income there was paid by said Mitchell Trust Company, the sum of $500 upon interest due May 1, 1927, the interest due Nov. 1, 1927, the entire interest due during the years 1928, 1929, and 1930 and 1931, and the sum of $60.58 upon the interest due May 1st, 1932, and that at suspension of the said Trust Company, the said rental account showed a credit balance of $216.85. That all of said acts were done by the Trust Company, without the knowledge or consent of the bondholders."

On or about the month of August, 1933, the trust company being insolvent was taken over by the plaintiff Strain, as superintendent of banks for liquidation, and on or about the 10th day of October, 1933, he commenced this action.

In its prayer for relief plaintiffs ask the court to declare:

"That a lien in favor of the plaintiffs as representing the general creditors and depositors of the said Mitchell Trust Company be impressed upon the trust property to the extent and for

the amount of all sums advanced and paid by the said Mitchell Trust Company to and for the benefit of the beneficiaries of said trust or for the protection and preservation of the said trust or enrichment of the trust estate."

Upon the facts as above set out, the court made the following conclusions of law:

"That the Mitchell Trust Company under the foreclosure of its second mortgage holds the legal title to the property covered by the mortgage securing the payment of $20,000 first mortgage bonds involved in this action, subject to the said mortgage and the rights of the bondholders thereunder.

"That the plaintiff is not entitled to any interest in or lien upon said property for interest and taxes paid by the Mitchell Trust Company, superior to the rights and interest of the holders of said $20,000 first mortgage bond issue involved herein.

"That the plaintiff is estopped from asserting or enforcing any claim for taxes and interest paid by the Mitchell Trust Company that is superior to the rights and interests of the bondholders herein."

Judgment was entered accordingly, and plaintiff appeals.

Appellant in his brief states his theory of the case as follows:

"Plaintiff seeks an adjudication determining the status of the title to the real property described in the mortgage, his contention being that the same is trust property, and also charging the trust property with the amount of the advancements made for taxes and interest."

 We do not agree with the contention that the property involved is "trust property," nor that we are dealing with a "trust estate." The original transaction was between the trust company and the mortgagor. The trust company loaned to the mortgagor $20,000 in money and took back twenty $1,000 negotiable bonds secured by a mortgage on certain real estate in Chamberlain. This money was the money of the trust company and it had a perfect right to make this loan just as it did. So far as the character of this transaction is concerned, there is no difference between the twenty $1,000 negotiable bonds and the one negotiable note for $20,000, and no trust was created. The trust company

then indorsed these bonds "without recourse," as it had a right to do and sold them to various purchasers. By this act, the trust company divested itself of all beneficial interest in the bonds and the mortgage as well. True, the trust company retained the mortgage and acted as agent for the bondholders to collect and remit the interest, but there was no interest in the mortgaged property coupled with this agency, and the trust company had no authority to create any liability against the bondholders.

"The mere employment of the word 'trustee' after the name of Walker [Trust Company] is insufficient to create a trust or operate as notice of any kind to appellant." Rua v. Watson et al., 13 S. D. 453, 83 N. W. 572, 573.

The "status of the title to the real property described in the mortgage" is fully determined by what is said by this court in the case of Bush v. Froelich, 14 S. D. 62, 84 N. W. 230, 232. The similarity of the facts in that case to the facts in this case is very striking, except that there was no second mortgage involved in the Bush Case, but in that case the trust company, without the knowledge of the owner of the mortgage, paid the taxes on the mortgaged property and the interest on the note for something like seven years and then tried, as the plaintiff is attempting to do in this case, to compel the owner of the mortgage to repay all sums so advanced with interest thereon from the date of payment. In reply to this proposition, this court said:

"It was the duty of the trustee and of the loan company to have notified the plaintiff, as soon as they were aware of the failure of Froelich to pay either interest or taxes when the same became due, and if, by reason of this failure to so notify the plaintiff, she refrained from directing the foreclosure of her mortgage and loss is to result to any party from the failure to so foreclose, the defendants should sustain the loss, and not the plaintiff, to the extent, at least, of the interest and taxes so paid."

This language is very apropos to the situation in this case. Had the trust company notified the bondholders of the default of the mortgagor to pay the 1925 taxes, the bondholders could have taken such steps as they saw fit to collect on their bonds but the trust company had no authority to advance money to pay taxes and interest and thereby acquire a lien superior to that of the lien

of the bondholders, and the trial court was fully justified in holding that the plaintiff "is now estopped from asserting or enforcing any such right, title, claim, interest, or lien upon such property against the lien of said first mortgage."

The judgment appealed from is affirmed.

All the Judges concur.